IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THOMAS BALL, | § § | |
| *Plaintiff*, | § § § | 5-17-CV-00383-RBF |
| vs. | § § | |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION; | § § § § § | |
| *Defendant*. | § § § | |

**ORDER**

This Order concerns Plaintiff Thomas Ball's request for judicial review of the administrative denial of his application for disability insurance benefits under Title II of the Social Security Act. This action was assigned to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules, and the docket management order entered on September 29, 2017, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration, *see* 42 U.S.C. § 405(g), and the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(c) as both parties have consented to magistrate jurisdiction. *See* Dkt. Nos. 6 & 8.[1]

After considering Ball's Brief, Dkt. No. 12, the Brief in Support of the Commissioner's Decision, Dkt. No. 14, the transcript of the administrative proceedings ("Tr."), Dkt. No. 7, the other pleadings on file, the applicable authorities and regulatory provisions, and the entire record

---

[1] In light of the parties' consents, the District Court reassigned this case to U.S. Magistrate Judge John W. Primomo for all proceedings and the entry of final judgment. *See* Dkt. No. 10. The case was then administratively reassigned to the undersigned upon Judge Primomo's retirement.

in this matter, the Court finds the Administrative Law Judge ("ALJ") failed to employ the proper legal analysis in evaluating the treating source opinion of Dr. Greiner and this error was not harmless. The Court therefore **REVERSES** the opinion of the ALJ and **REMANDS** this case to the Commissioner for further consideration consistent with this opinion.

## I. Background

Plaintiff Ball filed his application for disability insurance benefits on February 25, 2016, alleging a disability onset date of February 23, 2016. Tr. 157-60. Ball was 58 years old on the date he alleges he became disabled and 59 years old at the time of the ALJ's decision. Ball has a bachelor's degree in psychology and a master's degree in human resources administration. *Id.* 44. Ball alleged the following impairments rendered him disabled: high blood pressure; hypertension; a neck injury; chronic pain; anxiety; depression; insomnia; issue with weight-bearing joints; osteoarthritis; and unspecified heart problems. *Id.* 186.

Ball's claim was initially denied on June 29, 2016, *id.* 77, and once again on August 25, 2016, after he requested reconsideration, *id.* 78-90, 102-04. Following the denial of his claim, Ball requested an administrative hearing. *Id.* 105-08. Ball and his attorney attended the administrative hearing on January 12, 2017, at which Ball and vocational expert Judith Harper testified. *Id.* 41-65.

The ALJ denied Ball's claim for benefits. *Id.* 19-27. In reaching that conclusion, the ALJ found Ball met the insured-status requirements of the Social Security Act through December 31, 2020 and, accordingly, applied the five-step sequential analysis required by the regulations. At step one of the analysis, the ALJ found that Ball had not engaged in substantial gainful activity since the alleged onset date of February 23, 2016. *Id.* 21. At step two, the ALJ found that Ball had the severe impairment of coronary artery disease status post percutaneous coronary

intervention. *Id.* 21. The ALJ, however, found that the following conditions were not severe: hypertension; hyperlipidemia; obesity; gastroesophageal reflux disease; hiatal hernia; insomnia; depression; and anxiety. *Id.* 21-23. At step three, the ALJ found that none of Ball's impairments meet or medically equal the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 23.

Before reaching step four of the analysis, the ALJ found that Ball retains the physical and mental residual functional capacity to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b) and Social Security Rulings 83-10 and 96-8. *Id.* 23-26. In other words, the ALJ determined Ball could: "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," walk and stand "a good deal," or sit most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

At step four, after considering this residual functional capacity and the testimony of the vocational expert, the ALJ determined that Ball was able to perform the past relevant work of an "efficiency expert" (Department of Transportation ("DOT") 012.167-070), which is classified as light, skilled work in the DOT and as light to medium work as actually performed. Tr. 26-27. Accordingly, the ALJ determined that Ball was not disabled for purposes of the Social Security Act, and therefore was not entitled to receive benefits. *Id.* The ALJ did not conduct an alternate, step-five analysis.

Ball subsequently requested review of the ALJ's finding, which was denied by the Appeals Council. *Id.* 2-7. Accordingly, on May 2, 2017, after exhausting all available administrative remedies, Ball filed suit for judicial review of the administrative determination. Dkt. No. 1.

## II. Legal Standards

*Standard of Review*. To review the denial of benefits, a court determines only whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Factual findings supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant like Ball is disabled only if his physical or mental impairment or impairments are so severe that he is unable to perform his previous work and cannot—considering his age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy and regardless of whether such work exists in the area in which he lives, a specific job vacancy exists, or he would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

*Overview of the Evaluation Process and Burden of Proof.* "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id.*; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotation marks omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of performing the work he has actually performed in the past or as defined by the DOT, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. Analysis

Ball complains that the ALJ committed three different errors, each requiring remand. First, Ball argues that the ALJ erred in classifying his prior work of an "emergency management program manager" as prior relevant work of an "efficiency expert." Accordingly, Ball argues that the ALJ denied benefits based on a position he never performed. Ball next argues that the ALJ erred by failing to provide "good/specific/supported" reasons for affording his treating cardiologist Dr. Diane Greiner's opinion only partial weight. To this end, he argues that the ALJ erred by failing to consider each of the six factors set forth in 20 C.F.R. § 404.1527(c) (the "*Newton* factors"). This error, according to Ball, led the ALJ to omit considering additional limitations when assessing his residual functional capacity, which in turn led to a non-disabled finding at step 4 that was not supported by substantial evidence. Third and finally, Ball argues

the ALJ's credibility finding is flawed because the ALJ failed to consider his "stellar work history," including 20 years of military service.

For the reasons discussed below, the undersigned finds that the ALJ failed to properly analyze Dr. Greiner's opinion in accordance with the applicable law and that this error is not harmless. This error alone necessitates a remand; Ball's other points of error need not be addressed.

*Dr. Greiner's opinion*. On September 23, 2016, Ball's treating cardiologist Dr. Greiner, submitted a medical opinion regarding Ball's "ability to do physical activities." Tr. 1653-55. Dr. Greiner indicated that she had been treating Ball for his diagnoses of coronary artery disease, angina, hypertensive heart disease, hypertension, hyperlipidemia, aortic valve disorder, and mitral valve disorder and that his prognosis was "fair." *Id.* In light of these impairments, Dr. Greiner opined that Ball could walk 1-2 city blocks without rest; he could continuously sit for 1 hour and stand for 10 minutes and in an 8-hour workday, he could stand/walk less than 2 hours and sit about 4 hours. *Id*. According to Dr. Greiner, Ball would need to take unscheduled breaks once or twice a week and would need to rest an average of 15-30 minutes prior to returning to work. *Id.* Ball could occasionally lift up to 10 pounds but never lift 20 or more pounds. *Id.* He had the following "significant limitations" in doing repetitive reaching, handling, or fingering: he could grasp, turn, and twist objects 30% of the day; engage in fine manipulation 80% of the day; and could only reach (including overhead) 15% of the day. *Id*. He could only spend 20% of the day bending and twisting and could occasionally twist, stoop, crouch, and climb stairs and ladders. *Id*. His impairments, according to Dr. Greiner, were likely to produce "good days" and "bad days," resulting in absences more than twice a month. *Id*.

In evaluating Dr. Greiner's opinion, the ALJ recognized that Dr. Greiner was a cardiologist who had a treating relationship with Ball. *Id.* 25-26. The ALJ, however, stated that despite this treating relationship, the "degree of limitation [set forth in Dr. Greiner's opinion] was not supported by either her treatment notes or the rest of the medical record." *Id.* Accordingly, the ALJ gave "partial weight" to Dr. Greiner's opinion. *Id.*

According to the so-called treating physician's rule, an opinion from a treating source, such as Dr. Greiner, is entitled to "great weight." *Newton*, 209 F.3d at 455. Moreover, an ALJ must give a treating source's opinion on the severity and nature of a plaintiff's impairment "controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Id.* (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (in turn citing 20 C.F.R. § 404.1527(d)(2))). In addition, "[t]he opinion of a specialist [such as Dr. Greiner] generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994) *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000). The undersigned is aware that the Social Security Administration published a new rule, applicable to claims filed on or after March 27, 2017, that eliminated the treating physician rule. *See* 20 C.F.R. § 404.1520c. Because Ball's claim was filed prior to this date, the pre-amendment version of the rule applies here. *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

In any event, an "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* And, under the rule applicable here, a treating physician's opinion "may be assigned little or no weight when good cause is shown," such as where "the physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory,

or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456 (citing *Greenspan v. Shalala*, 37 F.3d 232, 237 (5th Cir. 1994)). The Fifth Circuit in *Newton* held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)," which are now codified in 404.1527(c).[2] *Newton*, 209 F.3d at 453 (emphasis added).[3] These criteria, referred to as the "*Newton* factors" include:

(1) examining relationship;

(2) treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship;

(3) supportability of the medical opinion, including specifically whether the medical signs and laboratory findings supports the opinion;

(4) consistency with the record as a whole;

(5) specialization of the physician; and

(6) other factors brought the ALJ's attention "which tend to support or contradict the medical opinion"

20 C.F.R. § 404.1527(c).

---

[2] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez*, and the Court's reference to subsection (d)(2) and the *Newton* factors refers to the factors now present in subsection (c) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective August 24, 2012 to March 26, 2017) and 20 C.F.R. § 404.1527 (effective March 27, 2017, applicable "[f]or claims filed . . . before March 27, 2017).

[3] Some district courts in this circuit have also held, citing *Newton*, that an analysis of the *Newton* factors is also unnecessary when "the evidence supports a different conclusion or when an opinion is brief, conclusory, or unsupported by acceptable techniques." *See, e.g.*, *Palmer v. Barnhart*, No. A 06 CA 147 SS, 2007 WL 628760, at *3 (W.D. Tex. Feb. 22, 2007); *Stancle v. Colvin*, No. 4:15-CV-00405-CAN, 2016 WL 3172784, at *9 (E.D. Tex. Jun. 7, 2016).

Other than noting that Dr. Greiner is a treating cardiologist (factors one and five) and concluding, without any explanation, that the degree of limitation "was not supported by either her treatment notes or the rest of the medical record," the ALJ did not address any of the other *Newton* factors (specifically, factors two, three, four, and six) before giving Dr. Greiner's opinion only partial weight. Nor did the ALJ cite any competing first-hand medical evidence that could have been relied upon to render *Newton* inapplicable. *See Garza v. Colvin*, No. CV B-14-242, 2016 WL 1105088, at *9 (S.D. Tex. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1090239 (S.D. Tex. Mar. 21, 2016) (explaining that "the *Newton* analysis is not required if the ALJ relies on competing first-hand medical evidence when rejecting the treating physician's opinion"). It is also unclear from the ALJ's decision which portions of Dr. Greiner's opinion were credited and which portions were not. "Although the [C]ourt does not expect the ALJ to address every piece of evidence and every step of his reasoning process, a decision should include at least sufficient detail for the reviewing court to determine whether the proper legal standards were used to evaluate the evidence." *Nalls v. Astrue*, No. 3:08-CV-0534-D, 2008 WL 5136942, at *6 (N.D. Tex. Dec. 8, 2008) (ALJ erred by rejecting the treating physician's medical opinions regarding the nature and severity of plaintiff's PTSD without performing a detailed analysis of the *Newton* factors); *see also* SSR 96-2p, 1996 WL 374188 at *4-5 (explaining that the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

The Commissioner nevertheless argues that the ALJ properly analyzed Dr. Greiner's opinion because (1) Dr. Greiner's opinion is inconsistent with her own treatment notes, Def. Br.

9-11; (2) *Newton* only applies where the ALJ declines to give *any* weight to the treating physician's opinion; *id.* at 11; and (3) other providers examined Ball during the relevant period and they purportedly "provid[ed] medical evidence supporting the ALJ's finding that [Ball] could perform light work activity," Def. Br. at 10, 13. These arguments are unavailing.

First, the ALJ did not discuss or explain how or why Dr. Greiner's treatment notes are inconsistent with her treatment notes. *See Stancle v. Colvin*, No. 4:15-CV-00405-CAN, 2016 WL 3172784, at *9 (E.D. Tex. Jun. 7, 2016) ("[T]he Commissioner cannot offer post hoc rationalizations to justify the weight given to a treating physician's opinion, as the determination under 20 C.F.R. § 404.1527(c)(2) must 'stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council.'") (quoting *Newton*, 209 F.3d at 455). A review of the record doesn't reveal any such inconsistency to the undersigned. True, the record reflects Ball experienced some improvement in his symptoms after the disability onset date. But the record is also replete with Ball's numerous records of hospitalizations for chest pains attributed to serious heart defects.

As Dr. Greiner noted in March 2016, "[t]he patient has a very complex cardiac history over the past year. He apparently has very small vessels with quite [a] bit of distal disease. The caliber of his vessels has required balloon angioplasty and bare metal stent replacement. He continues to have symptoms." Tr. 2232-33. Accordingly, Dr. Greiner referred Ball to Enhanced External Counter Pulsation ("EECP") therapy. *See id.* 2244. Two months later, in May 2016, Dr. Greiner noted that Ball "continues to be symptomatic despite PCI [Percutaneous Coronary intervention]." *Id*. 2376. Although Ball's EECP therapy resulted in a "small reduction in his cardiovascular symptoms," by May 17, 2016, he was still only able to walk 2 blocks (as opposed to ½ a block) without symptoms," *id.* 2379, which is entirely consistent with Dr. Greiner's

12

September 2016 opinion. By December 2016, Ball underwent right heart catheterization, which the ALJ noted "was suggestive of diastolic dysfunction." *Id.* 26 (citing *id.* 2383 & 2435). And, two weeks before Dr. Greiner issued her opinion regarding Ball's limitations, Dr. Greiner noted that Ball's symptoms seemed to worsen with exertion. *See id.* 2427 ("He continues to become short of breath in a class II to III pattern with exertion such as walking one to two blocks on a level surface. He also has more difficulty in the humidity as far as exerting himself."). Although Ball denied chest pain when meeting with Dr. Greiner in January 2017, Dr. Greiner specifically noted that Ball's class III dyspnea on exertion persisted. *Id.* 26 (citing *id.* 2435). Accordingly, although the Commissioner has cherry picked select portions of Dr. Greiner's treatment records that suggest improvement, there is ample support in the record to suggest that Dr. Greiner's September 2016 opinion was consistent with her treatment notes as a whole.

Second, a number of district courts in this circuit, including in this district, have persuasively determined that, under the version of the rule in effect for present purposes, *Newton* should apply any time a treating source's opinion is afforded less than controlling weight.[4] And at least one decision in this district persuasively concluded that *Newton* should apply in circumstances materially indistinguishable from those presented here. *See Acevedo v. Berryhill*, No. EP-3-17-CV-00238-RFC, 2018 WL 1041307, at *5 (W.D. Tex. Feb. 23, 2018). Moreover, even if *Newton* were not to strictly apply under these circumstances, substantial evidence in the

---

[4] *See, e.g.*, *Stapleton v. Berryhill*, No. 2:16-CV-251, 2018 WL 1449397, at *10 (N.D. Tex. Mar. 7, 2018), *report and recommendation adopted*, No. 2:16-CV-251-D, 2018 WL 1426901 (N.D. Tex. Mar. 22, 2018) ("[I]f declining to give a treating source medical opinion 'controlling weight,' an ALJ must consider the [404.1527] factors . . . "); *Conte v. Comm'r, SSA*, No. 4:16-CV-00048-CAN, 2017 WL 1037570, at *5 (E.D. Tex. Mar. 16, 2017); *Richardson v. Colvin*, 4:15-CV-0879-BL, 2017 WL 237637, at *9 (N.D. Tex. Jan. 17, 2017); *McKellar v. Colvin*, No. CV H-15-3298, 2016 WL 7742812, at *9 (S.D. Tex. Aug. 19, 2016); *Neal v. Colvin*, No. A-14-CV-906-AWA, 2015 WL 5098796, at *4 (W.D. Tex. Aug. 31, 2015); *Valadez v. Barnhart*, No. CIV.A. SA04CA1176XR, 2005 WL 2648329, at *6 (W.D. Tex. Oct. 11, 2005).

current record nonetheless would not support the ALJ's decision to afford Dr. Greiner's opinion only partial weight because that decision is essentially unexplained.

Finally, the treatment notes from other medical providers cited by the Commissioner do not provide competing first-hand medical opinions. The Commissioner cites nothing in these providers' treatment notes that controverts Dr. Greiner's opinion. The fact that Ball was advised in his hospital discharge instructions to avoid heavy lifting and long drives for 1 week does not conflict with Dr. Greiner's opinion, offered several months later, that Ball could not lift 20 or more pounds. Further, even if the treatment notes could be reasonably construed as controverting evidence, they do not constitute competing medical opinions that permit the ALJ to bypass an analysis of the *Newton* factors. *See Anderson v. Colvin*, No. 3:15-CV-781-BN, 2016 WL 299019, at *6 (N.D. Tex. Jan. 25, 2016) ("medical notes that do not give an opinion on Plaintiff's physical limitations in the workplace or what activities she would be able to perform do not controvert the opinion of Plaintiff's treating physician"); *Ramirez v. Colvin*, No. 3:13-CV-3846 N-BK, 2015 WL 328233, at *6 (N.D. Tex. Jan. 26, 2015) ("competing first-hand medical evidence is where 'one doctor's opinion is more well-founded than another'") (quoting *Newton*, 209 F.3d at 458). Neither the ALJ nor the Commissioner have identified another treating source opinion that is more well-founded than Dr. Greiner's.

For these reasons, the ALJ procedurally erred by failing to fully consider and weigh Dr. Greiner's opinion, an error that on this record is not harmless. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (noting, "procedural perfection is not required unless it affects the substantial rights of a party"). The record reveals considerable deficits in Ball's ability to walk more than a few blocks. Had the ALJ afforded Dr. Greiner's treating source opinion controlling weight, the ALJ likely would not have found Ball capable of performing the full range of light

duty work, and hence would have determined Ball unable to perform his alleged past relevant work. *See* 20 C.F.R. § 404.1567(b) (explaining that even where the weight lifted "may be very little," a job is considered light duty "when it requires a *good deal of walking or standing*") (emphasis added).

Because the ALJ did not conduct an alternate step five analysis, there is no evidence in the record suggesting that Ball might be able to perform other work, or even that he has skills transferrable to jobs at a lesser level of exertion. *Compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 201.06 (directing a finding of "disabled" for individuals of advanced age who are limited to sedentary work with no transferable skills) *with id.* Subpt. P, App. 201.07 (directing a finding of "not disabled" for individuals of advanced age who are limited to sedentary work but have transferable skills). Accordingly, on this record, the ALJ's procedural error "casts into doubt the existence of substantial evidence to support the ALJ's decision," and remand is required. *See Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *6 (N.D. Tex. Jun. 30, 2014) ("On the record before it, the Court cannot say that the failure to conduct the detailed analysis is harmless error. Had the ALJ conducted that analysis, there is a realistic possibility that he would have given greater weight to the opinions of the treating physician . . . There is also a realistic possibility that the ALJ would have sought clarification or additional evidence as contemplated by 20 C.F.R. § 404.1512(e) . . . whether the ALJ accepted the opinions of [the treating physician] or sought additional evidence, such change would cast into doubt the existence of substantial evidence to support the ALJ's current decision.").

In light of the Court's findings that a remand is required for failure to properly analyze Dr. Greiner's opinion, the Court need not address Ball's other points of error. The Court, however, notes that a preliminary review of Ball's first point of error suggests that it might have

some merit. But this type of issue should be raised during administrative proceedings; it cannot be raised for the first time when seeking judicial review. *See, e.g.*, *Ventura v. Colvin*, No. 6:16-CV-16, 2017 WL 1397130, at *14 (S.D. Tex. Feb. 27, 2017), *report and recommendation adopted*, 2017 WL 1397131 (S.D. Tex. Mar. 30, 2017) (collecting authorities and finding that plaintiff forfeited challenge to the vocational expert's characterization of her past positions as past relevant work).

*Remand Instructions*. For the reasons discussed above, remand is appropriate. The ALJ shall further review the administrative record and fully develop the findings regarding the proper weight afforded to the opinion Dr. Greiner, as discussed herein. If necessary, the ALJ shall hold another hearing and obtain new vocational expert testimony.

## IV. Conclusion

For the reasons discussed above, substantial evidence does not support the Commissioner's decision. **IT IS THEREFORE ORDERED THAT** the ALJ's decision that Ball is not disabled is **REVERSED** and this case is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

**IT IS SO ORDERED.**

SIGNED this 28th day of September, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE